# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND HEALEY,<br>    Plaintiff,<br>v.<br>DR. KIM ADAMSON, *et al.*,<br>    Defendants. | 3:19-cv-0483-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |

Before the Court is Defendants' motion to enforce the settlement agreement. (ECF No. 17.) Plaintiff Raymond Healey ("Healey") opposed the motion, (ECF No. 18), and Defendants replied. (ECF No. 19.) Defendants also filed an errata to the motion, (ECF No. 20), coupled with an exhibit under seal. (ECF No. 22.)[2] As more fully set forth below, the Court recommends Defendants' motion to enforce the settlement agreement (ECF No. 17) be granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Healy is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). At all times relevant to this action, Healy was housed at the Lovelock Correctional Center ("LCC"). Healy alleges he was denied treatment for Hepatitis C ("HCV") while in the custody of NDOC. (ECF No. 5.) The Court issued a screening order allowing Healy to proceed on his Eighth Amendment claim for deliberate indifference to serious medical need. (*Id.*)

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] The Court grants Defendants' motion to seal the exhibit, (ECF No. 21), as it contains Plaintiff's medical records. In addition, Plaintiff's motion to strike this exhibit, (ECF No. 25), is denied.

On February 23, 2021, an early mediation conference was held, and the parties reached a settlement. (ECF No. 10.)  The terms of the settlement were placed on the Court's official record. (*Id.*; ECF No. 16.) The transcript from the hearing reveals the following. First, the mediator stated on the record she would recite the terms of the settlement and if any party or counsel required clarification or had any questions, that person was invited to advise the mediator. (ECF No. 16 at 3:6-23.)  The mediator further stated she would canvass the parties and counsel to confirm that they understood and agreed to the settlement terms and that the settlement agreement placed on the record would be binding on both parties. (*Id.* at 3:8-15.)  The mediator further noted, although the parties would have a binding settlement agreement that day, Defendants' counsel would memorialize the terms in of the settlement in a written agreement for the parties' signatures.  (*Id.* at 4:13-5:11.)  The mediator also confirmed that the parties understood and agreed regardless of whether either party refused to sign the written agreement this would not be no basis to rescind the settlement.  (*Id.* at 7:19-8:21.)

The terms of the settlement, as stated on the record, and agreed to by the parties and counsel, were as follows:

> MEDIATOR KETNER: Okay.
>
> Now we're going to put the terms on the record, so listen carefully. Let me know if you have any questions. I am going to ask that each of you understand and agree.
>
> Okay. So, Mr. Healey is agreeing to settle his claims and dismiss his claims against -- his actual, I think it's an Eighth Amendment claim -- against NDOC and the NDOC representatives, in exchange for receiving testing for Hepatitis C, which I'll refer to as HCV, within the next 30 days of his execution of the settlement agreement.
>
> Do you understand that, Mr. Healey?
>
> MR. HEALEY: Yes, ma'am.
>
> MEDIATOR KETNER: Mr. Rands?
>
> MR. RANDS: Yes.

1
2    MEDIATOR KETNER: Associate Warden Rubart.

3    MR. RUBART: Yes, ma'am.

4    MEDIATOR KETNER: The testing will be done by an NDOC medical provider at the Lovelock Correctional Center, and sent to Labcorp for processing.
5

6    Do you understand that, Mr. Healey?

7    MR. HEALEY: Yes.

8    MEDIATOR KETNER: Is that agreeable to you, Mr. Rands?
9
     MR. RANDS: Yes.
10

11   MEDIATOR KETNER: Do you understand that, Associate Warden Rubart?
12
     MR. RUBART: Yes, ma'am.
13
     MEDIATOR KETNER: Okay.
14

15   The testing will be done in the presence of the Lovelock director of nursing.

16
     Is that agreeable –
17

18   UNIDENTIFIED SPEAKER: No, it's – excuse me, not the testing. The blood draw will be done in -- the testing is going to be done by Labcorp and we don't have anything to do with that.
19

20   MEDIATOR KETNER: Thank you for clarifying.

21   The blood draw will be –

22   UNIDENTIFIED SPEAKER: Okay.
23
     MEDIATOR KETNER: -- taken in the presence of the Lovelock director of nursing.
24

25   Is that acceptable to you, Mr. Healey?

26   MR. HEALEY: Yes, ma'am.

27

3

1  MEDIATOR KETNER: Mr. Rands?

2  MR. RANDS: Yes.

3  MEDIATOR KETNER: Associate Warden Rubart?

4  MR. RUBART: Yes, ma'am.

5  MEDIATOR KETNER: After the lab results are issued, Mr. Healey will attend a medical appointment with a member of the medical staff to review the results.

8  Do you understand that, Mr. Healey?

9  MR. HEALEY: Yes, ma'am.

10  MEDIATOR KETNER: Mr. Rands?

11  MR. RANDS: Yes.

12  MEDIATOR KETNER: Associate Warden Rubart?

13  MR. RUBART: Yes, ma'am.

15  MEDIATOR KETNER: Okay.

16  During that medical appointment with a member of the medical staff, Mr. Healey will be permitted to personally and physically read the results of the lab work, but will not be provided with a copy of the results.

19  Do you understand that, Mr. Healey?

20  MR. HEALEY: Yes, ma'am.

21  MEDIATOR KETNER: Mr. Rands?

22  MR. RANDS: Yes.

23  MEDIATOR KETNER: Associate Warden Rubart?

24  MR. RUBART: Yes, ma'am.

26  MEDIATOR KETNER: NDOC agrees to comply with the terms of the Consent Decree that has been issued in the case entitled: In Re: HCV Prison Litigation, filed in the United States District Court of the

4

District of Nevada, case number 3:19-cv-00577-MMD-CLB. And that is document number 80.

NDOC agrees to provide -- I'm sorry.

NDOC agrees to comply with the terms of that Consent Decree based upon Mr. Healey's lab results.

Do you understand that, Mr. Healey?

MR. HEALEY: Yes, ma'am.

MEDIATOR KETNER: Mr. Rands?

MR. RANDS: Yes.

MEDIATOR KETNER: Associate Warden Rubart.

MR. RUBART: Yes, ma'am.

MEDIATOR KETNER: Are there any terms of the settlement that have not been placed on the record? And I'm going to go over the timing for the stipulation for dismissal and the settlement agreement, but are there any other terms that have not been placed on the record?

UNIDENTIFIED SPEAKER: No.

MEDIATOR KETNER: Mr. Healey?

MR. HEALEY: Uh, no.

MEDIATOR KETNER: Associate Warden Rubart?

MR. RUBART: No, ma'am.

(*Id.* at 9:1-12:16.)

When the mediator, counsel and the parties put the settlement terms on the record, the mediator inquired of all present if there were any clarifications or questions concerning the settlement. (*Id.* at 4:17-23.) Healy asked the following question:

MR. HEALEY: Okay. So until I sign those papers and I've had a chance to look them over, this case is still open?

5

>MEDIATOR KETNER: The case is still open, but we are agreeing to the settlement today. As long as those paper [sic] accurately reflect what we're talking about today and putting on the record, we have a settlement today.
>
>MR. HEALEY: Okay.
>
>MEDIATOR KETNER: Okay?
>
>If one of the parties refuses to sign the agreement because you've had a change of heart, where, all of a sudden, you decide you don't want to settle based upon what we state as the terms today, the other side can ask MEDIATOR KETNER to enforce the agreement.
>
>So, Mr. Healey, if Mr. Rands puts something in the agreement that, you know – and I don't think that this is going to happen. I trust that he's going to follow what we put on the record today. But, if for some reason, when you see the settlement agreement and it doesn't say exactly what we're talking about today, or it says something that isn't mentioned as a material term of our agreement, you don't have to sign it. But, as long as that settlement agreement sets forth the terms that we're putting on the record today, and I asking you to agree to today, and you do agree to them today, then we have a settlement. And if you, all of a sudden, decide that you don't want to settle, Mr. Rands can ask you to enforce the settlement agreement.
>
>Do you understand that?
>
>MR. HEALEY: Yes, ma'am.

(ECF No. 16 at 8:9-9:14.)

After the settlement conference, defense counsel drafted a settlement agreement that set forth the terms of the agreement and sent it to Healy for his signature along with a stipulation to dismiss the case with prejudice. (ECF No. 17-1.) The written agreement accurately stated the terms of the settlement terms as stated on the record. (*Id.*) In spite of this, Healy refused the sign the documents. (ECF No. 17-2.) Thereafter, defense counsel corresponded with Healy to resolve any issues, however, Healy continued to refuse to sign the documents. (*Id.*) Ultimately, the Court held a status conference to address the issues. At the hearing, Defendants advised the court of their intention to file the present motion to enforce. (ECF No. 15.)

6

Defendants have now filed their motion to enforce. (ECF No. 17.) In the motion, Defendants argue the parties' oral contract was valid and binding and this court has the authority to enforce the contract. (*Id.*) Defendants contend that Healey participated fully in the mediation by making offers and counteroffers, acknowledged, agreed to, and understood all terms of the settlement agreement, and acknowledged the agreement was binding. (*Id.*) Therefore, the Court should enforce the settlement agreement.

In opposition, Healy claims the settlement should not be enforced. First, he claims he was under duress during the mediation and he was not free to leave the mediation. In addition, he argues the agreement is unenforceable because he received no consideration for the agreement, and he is entitled to liberal construction. Finally, he claims it would be against public policy to enforce the settlement agreement in this case. (ECF No. 18 at 4-8.)

In reply, Defendants point out Healy never asked to leave the mediation or return to his cell and he never stated on the record he did not want to proceed with the mediation. (ECF No. 19 at 4.) Defendants argue Healy is only stating he was under duress now because it appears he believes he did not get enough from the settlement. (*Id.* at 4.) Defendants also argue a monetary settlement is not required for there to be sufficient "consideration" to support a contract. Defendants assert the consideration provided for this agreement is Defendants' agreement to perform as stated in the agreement. (*Id.* at 4-5.) Finally, Defendants argue enforcing the contract does not violate public policy. (*Id.*)

## II.   DISCUSSION

### A.   Enforcement of the Settlement Agreement

Courts have inherent authority to enforce settlement agreements between parties in pending cases. *See Metronet Services Corp. v. U.S. West Communications*, 329 F.3d 986, 1013-1014 (9th Cir. 2003), *cert. granted and judgment vacated on other grounds by Quest Corp. v. Metronet Services Corp.*, 540 U.S. 1147 (2004); *Doi v. Halekulani*

*Corporation*, 276 F.3d 1131, 1136-1138 (9th Cir. 2002). To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman v. Reporter Pub Co.*, 12 F.Supp 1089, 1092 (S.D. Cal. 1998). First, the settlement agreement must be complete. *Doi*, 276 F.3d at 1137; *Maynard v. City of San Jose*, 37 F.3d 1396, 1401 (9th Cir. 2004). Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Doi,* 276 F.3d at 1137-38; *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-1145 (9th Cir. 1977). Where parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *Harrop*, 550 F.2d at 1144. Once a party enters into a binding settlement agreement, that party cannot unilaterally decide to back out of the agreement. *Doi*, 276 F.3d at 1131.

First, the court finds that agreement at issue in this case was complete. In this case, as in *Doi*, 276 F.3d 1131, the parties spent several hours in private and joint sessions and agreed to a settlement of the case. The parties and counsel then reconvened in open court to place the material terms of the agreement onto the record. (ECF Nos. 10 and 16.) During the session, the parties and counsel stated they understood and agreed they had a binding settlement that day and that the terms could not be changed. (ECF No. 16 at 4:12-6:17.) The parties were canvassed on each material term and Healy agreed to each of those terms during the canvass. Therefore, the settlement was complete on February 23, 2021, when the parties confirmed and agreed to each material term on the record, in open court.

Next, the court must consider whether the settlement agreement was the result of an agreement of the parties or their authorized representatives. There is no dispute that Healy and Defendants' authorized representative agreed to the stated terms of the settlement on the record. (ECF No. 16 at 8:9-9:14.) These material terms were later reduced to a writing in the settlement agreement. (ECF No. 17-1.)

### B. Settlement Enforceability under Nevada Law

Healy argues that the settlement agreement cannot be enforced because it was entered under duress, it lacks consideration and violates public policy. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *O'Neil v. Bunge Corp.*, 365 F.3d 820, 832 (9th Cir.2004) (internal quotation marks and citations omitted) (applying Nevada law). In Nevada, settlement agreements are contracts governed by general principles of contract law. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citation omitted). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds and consideration." *Id.* (citation omitted). "A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *Id.* (citation omitted). Thus, Healy's arguments arise under principles of Nevada contract law and the court address each argument in turn.

### C. Duress

Healy claims he was under "duress" when he entered into the settlement with Defendants and thus it should not be enforced. (ECF No. 18 at 2-5.) In general, to establish duress a party must show "a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Chan v. Lund*, 188 Cal.App.4th 1159, 1174-75 (2010). Being put to a voluntary choice of perfectly legitimate alternatives," however, is the "antithesis of duress." *In re Executive Life Ins. Co.,* 32 Cal.App.4th 344, 391, 38 Cal.Rptr.2d 453 (1995).

The Court has listened to the recording of the portion of the mediation placed on the record, (ECF Nos. 10 & 15), and has reviewed the transcript. (ECF No. 16.)  At no point is there any indication or evidence that Healy was under any type of duress which effectively made it impossible for him to refuse to settle the case. There is no evidence that any threats were made to Healy or that he had no "alternative" but to agree to the

terms of the settlement agreement. There is no evidence that any coercive tactic or action was taken by anyone involved in the mediation.

In addition, Healy does not attest in his opposition that he requested to leave the mediation and was not allowed to do so. In fact, as stated above, Healy was invited by the mediator to stop the settlement canvass if at any point he had questions or concerns and repeatedly asked if he had questions. (ECF No. 16 at 3, 8, 12, 13, 14.) Therefore, the Court finds there is no evidence Healy was under duress during the mediation or that he ever asked to leave the mediation and return to his cell.

### D.    Consideration

Next, Healy contends the settlement agreement is unenforceable due to a lack of consideration. (ECF No. 18 at 5.)  Consideration requires something that is bargained for and given in exchange for an act or promise. *Zhang v. Eighth Judicial Dist. Court*, 103 P.3d 20, 24 n. 22 (Nev. 2004), abrogated on other grounds by *Buzz Stew, LLC v. City of North Las Vegas*, 181 P.3d 670 (Nev. 2008); *see also Jones v. SunTrust Mortg., Inc.*, 274 P.3d 762, 764 (Nev. 2012) ("Consideration is the exchange of a promise or performance, bargained for by the parties.")

Healy claims that the consideration he received in the settlement was not adequate because NDOC was already bound to the Consent Decree in *In Re HCV Prison Litigation,* Case Number 3:19-CV-0577-MMD-CLB. Defendants are correct in their reply that Healy misunderstands consideration. (ECF No. 19.) Rather, in this case, both parties received something they wanted, and both gave up something in return – which is sufficient to establish consideration. Specifically, in exchange for dismissal of this case, NDOC agreed to provide Healy with an expedited medical appointment within 30 days and to make an appointment with Healy to view the result of testing. The Consent Decree did not obligate NDOC to provide Healy either of those things on an expedited basis. Also, Healy is not a class member to 3:19-CV-0577-MMD-CLB because

10

he does not have an active HCV infection. (ECF No. 22.) Therefore, the court finds there is adequate consideration related to the settlement agreement.

### E.  Public Policy

Finally, Healy claims that enforcing this settlement agreement would discourage other inmates from fully participating in mediation in the future and is thus against public policy. (ECF No. 18 at 8.)  Healy has not shown any evidence the settlement agreement in this case is unconscionable, illegal or in violation of public policy.  See *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1165 (Nev. 2004) (citing unconscionability as a limitation on enforceability of a contract); *NAD, Inc. v. Dist. Ct.*, 77, 976 P.2d 994, 997 (Nev. 1999) (stating "parties are free to contract in any lawful matter"); *Miller v. A & R Joint Venture*, 582, 636 P.2d 277, 278 (Nev. 1981) (discussing public policy as a limitation on enforceability of a contract).

In sum, the parties agreed to the material terms of the settlement in the case and placed them on the court record. Healy received what he bargained for at the early mediation conference as more fully set forth in the settlement agreement. (ECF No. 17-1.)  The bargain is memorialized in the settlement agreement and in the court's record. (*Id.*; ECF No. 16.) Therefore, the Court rejects Healy's arguments to set aside the agreement.

### III.  CONCLUSION

The Court recommends that the District Court grant Defendants' motion to enforce the settlement agreement, (ECF No. 17), and order that the settlement agreement attached as Exhibit 1, (ECF No. 17-1), to Defendants' motion be ratified as a binding agreement.

The Court notes that Healy has refused to sign the written settlement agreement, (ECF No. 17-1), and the stipulation for dismissal of this case with prejudice.  The Court anticipates that Healy will continue to refuse to sign these settlement documents. Therefore, the Court further recommends that the Defendants be ordered to perform as

agreed in the settlement agreement (to the extent they have not already done so[3]), and the District Court order this case dismissed with prejudice with the parties to bear their own costs and attorney's fees.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Court enter an order as follows:

1. **GRANT** Defendants' motion to enforce the settlement agreement (ECF No. 17), and order that the settlement agreement attached as Exhibit 1 (ECF No. 17-1) to Defendants' motion be ratified as a binding agreement.

2. **ORDER** Defendants to perform under the terms of the settlement agreement as outlined in Exhibit 1, (to the extent they have not already done so); and,

3. **DISMISS** this case with prejudice, with the parties to bear their own costs and attorney's fees.

**DATED**: July 19, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3] It appears Defendants have already complied with the portion of the agreement to test Plaintiff for HCV. (ECF No. 17-1, pg. 4, Section III(A)).